UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KATHRYN E. NIXON,

          Plaintiff,

v.

FRANCISCAN HEALTH SYSTEM, et al.,

          Defendants.

CASE NO. C11-5076BHS

ORDER GRANTING DEFENDANT FRANCISCAN HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Franciscan Health System's ("Franciscan") motion for summary judgment (Dkt. 31) seeking dismissal of all of Plaintiff Kathryn E. Nixon's ("Nixon") claims alleged in her complaint. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants Franciscan's motion for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL HISTORY

On March 9, 2011, Nixon filed her amended complaint. Dkt. 11. On December 22, 2011, Franciscan moved for summary judgment. Dkt. 31. Nixon responded on January 9, 2012. Dkt. 40. Franciscan replied on January 13, 2012. Dkt. 45.

In her amended complaint, Nixon alleges that on January 12, 2010, while working at St. Joseph Medical Center, Defendant Atif Mian ("Mian"), who was contracted to Franciscan as a physician, intentionally touched Nixon's buttocks in an offensive and sexual manner, causing Nixon to suffer severe emotional distress and trauma. Dkt. 11 at 3. The next day, Nixon reported this incident to her immediate supervisor, Cyril Elep ("Elep"). *Id.*

Though Nixon, in her opposition to Franciscan's motion, repeatedly maintains that Franciscan "did nothing" (Dkt. 40 at 14, 15, 17, 21) or "essentially nothing" (*id.* at 31) in response to her report, Nixon does acknowledge the following steps were taken:

Elep responded to Nixon's report that same day, in an email, asking Nixon to meet with Elep and Jaime Broadfoot ("Broadfoot") of Human Resources to discuss the incident and how to proceed with Nixon's report. Two days later, on January 15, Nixon and her supervisor met with Broadfoot to discuss the alleged touching, and address any concerns regarding Nixon's comfort and safety at work should she have to interact with Mian again. Dkt. 40 at 4. The three of them discussed "safety planning" to ensure Nixon's comfort at work, at which time Elep and Broadfoot encouraged Nixon to report any additional concerns or uncomfortable interactions with Mian. *Id.* Nixon was also encouraged to "try to keep her distance" from Mian, and "to use security to escort her to her car if she wanted that." *Id., citing* Dkt. 35-2. Because Mian was a contracted physician, he was allowed to visit his patients and neither Elep nor Broadfoot were able to tell him not to visit his patients on the ninth floor where Ms. Nixon worked. *Id.* at 40. Broadfoot reported Nixon's complaint to the Director of Human Resources, Sharon

Royne ("Royne"), on January 18, 2010. *Id.* (citing Dkt. 35 at 3). That afternoon, Broadfoot and Royne met with the Vice President for Quality and Associate Chief Medical Officer, Dr. Tony Haftel ("Dr. Haftel"), to discuss Nixon's report. *Id.* The three decided to move forward with the investigation by having Broadfoot talk with any identifiable witnesses that would have relevant information about the incident or "other concerns about Dr. Mian." *Id.* (citing Dkt. 35 at 19-20). It was also decided that Dr. Haftel and Royne would meet with Mian to discuss the incident. *Id.* Before meeting with Mian on February 16, 2010, Ms. Broadfoot interviewed several "background witnesses." Dkt. 40 at 6.

On or about January 21, 2010, Nixon saw Mian at the workplace. Dkt. 41-3 at 4. Though the two did not exchange words or interact, Nixon saw Mian from 50 feet away in a hallway, and believed he gave her an "odd look." *Id.* At that time, Mian was not aware that Nixon had reported any complaint. Dkt. 40 at 6. She claimed to have responded so adversely to witnessing Mian that she needed time away from work, and her employer agreed to put her on paid administrative leave. Dkt. 34-17. Though Franciscan conducted an investigation, it informed Nixon on April 15, 2010, that the results were inconclusive, and that Franciscan could not conclude that Mian had engaged in inappropriate action, or that disciplinary action was warranted. Dkt. 34-22. Nixon never returned to work and resigned. Dkt. 31 at 11.

The facts in this case are largely undisputed. Nixon and Franciscan's dispute centers on the interpretation of these facts and whether or not Nixon is entitled to relief from Franciscan for any injury she may have suffered. *Compare* Dkt. 11 *to* Dkt. 31.

1  Though Franciscan engaged in an investigation, the parties dispute the adequacy of
2  Franciscan's investigative efforts, as well as the adequacy of its attempts to protect Nixon
3  from further injury resulting from seeing Mian at the workplace. *See id*. Finally, the
4  parties disagree as to whether or not Nixon's resignation amounts to constructive
5  discharge. *See id*.
6       In her amended complaint, Nixon first claims that Franciscan engaged in unlawful
7  employment practices, in violation of § 703(a) of Title VII, 42 USC §§ 2000e-2(a), by:
8  (1) failing to conduct a prompt, adequate, and appropriate investigation of Nixon's claim;
9  (2) failing to taking any action to ensure that Nixon would be protected from contact with
10 Mian; and (3) failing to take any disciplinary or remedial action against Mian. Dkt. 11 at
11 7-8. Nixon then claims that Franciscan engaged in discrimination, in violation of RCW
12 § 49.60.180, by failing to take prompt and appropriate remedial action in response to
13 Nixon's complaint of hostile work environment sexual harassment. Dkt. 11 at 8-9.
14       The facts are largely undisputed. *Compare* Dkt. 11 *to* Dkt. 31.  In addition,
15 Franciscan maintains that summary judgment should be granted in its favor even if the
16 facts contained in Nixon's complaint are accepted as true.  Dkt. 31 at 22, 23.
17 Accordingly, unless otherwise noted, solely for purposes of deciding Franciscan's motion
18 for summary judgment, the Court will accept as true the facts contained in Nixon's
19 complaint.
20
21
22

## II. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Franciscan's Motion for Summary Judgment**

In its motion for summary judgment, Franciscan argues that Nixon's Washington Law Against Discrimination ("WLAD") claim is barred as a matter of law because Franciscan is a nonprofit religious organization, and as such, falls into the exemption legislators intentionally created when passing WLAD. Dkt. 31 at 13-15. Second, Franciscan contends that even if the facts alleged by Nixon are assumed to be true, Nixon's Title VII claim fails as a matter of law because she has failed to show that the harassment she endured was objectively severe enough to support the claim. Dkt. 31 at 15-20. Next, Franciscan maintains that it responded appropriately in its investigation. Dkt. 31 at 21-22. Finally, Franciscan argues that Nixon's constructive discharge claim fails as a matter of law because she failed to show that the conditions she endured at work were so severe that a reasonable person would have felt compelled to resign. Dkt. 31 at 22-24.

### C. Hostile Work Environment Claim

Nixon contends that Franciscan's response to the alleged touching created a hostile work environment in violation of Title VII and the WLAD. Because sex discrimination, under the WLAD, parallels that of Title VII, the Court analyzes Nixon's state and federal discrimination claims together. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2001) (*citing Payne v. Children's Home Society of Washington, Inc.,* 77 Wn. App. 507 (1995)).

Title VII and the WLAD expressly prohibit sex discrimination in employment. 42 U.S.C. § 2000e-2(a)(1); RCW § 49.60.180. To prevail on a claim for sex discrimination based on a hostile work environment, a plaintiff must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) this conduct was unwelcome; and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991). The conduct must also be objectively, as well as subjectively, abusive so that a reasonable person would find the work environment so hostile that it would interfere with work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). In evaluating this, the Court considers a variety of factors including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or was simply a mere offensive utterance. *Little*, 301 F.3d at 966.

Here, Nixon claims to have experienced sex discrimination in violation of Title VII and the WLAD due to the hostile work environment she endured while employed by

Franciscan. The Court concludes that the single alleged touching and subsequent encounter with Mian, even if assumed to have taken place as Nixon claims, does not rise to the level of "severe or pervasive" so that a reasonable person would find that the conduct interfered with work performance. Courts have consistently found that a single act, absent pervasive conduct of an egregious nature, is not sufficient to establish a hostile work environment. *See Ellison*, 924 F.3d at 878 (stating that the less frequent the abuse is, the more severe it must be to support a hostile work environment claim); *see also LeGrand v. Area Res. For Comty. & Human Servs.*, 394 F.3d 1098, 1100 (8th Cir. 2005) (wherein harasser admitted to once grabbing plaintiff's buttocks and thigh and brushing his own genitals, as well as asking plaintiff to perform sexual acts on three separate occasions and the court held that there was no hostile work environment). It is well established that "[i]f a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe." *Brooks v. City of San Mateo,* 229 F.3d 917, 926 (9th Cir. 2011). The cases Nixon relies upon in supporting her claim involve "single incidents" far more egregious than an alleged touching on the buttocks and a subsequent encounter with the alleged harasser, during which Nixon and Mian were 50 feet apart. *See Little*, 301 F.3d at 967 (the "single incident" the plaintiff endured involved a string of three rapes during the course of a single evening). Though Nixon may have subjectively felt harassed, even if this Court assumes the facts Nixon alleges are true, the single offensive touching and the subsequent, distant witnessing of the alleged harasser is not objectively pervasive or severe enough to satisfy the elements of the hostile work environment claim.

### D.     Inadequate Investigation Claim

As discussed above, because Nixon cannot, as a matter of law, demonstrate that she was subjected to sufficiently severe or pervasive abuse to create a hostile work environment, her allegations that Franciscan failed to adequately investigate the harassment or protect her from further injuries resulting from encounters with Mian, as well as her constructive discharge allegations, cannot sustain her Title VII or WLAD claims. *See Arno v. Club Med,* Inc., 22 F.3d 1464, 1472 (9th Cir. 1994) (stating that when the statute would not cover the conduct, the employer has no obligation to remedy the alleged abuse). The Court need only examine the sufficiency of the employer's response to the complaint after determining that a hostile work environment did indeed exist. *See, e.g.*, *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir. 1995) (wherein the court turned to the consideration of the city's response only after concluding that the plaintiff was subjected to a hostile working environment).

Nixon's reliance on *Brooks* is misplaced because even though the court in *Brooks* evaluated the employer's remedial actions, it did so to support its finding that the plaintiff could not show she was subjected to a hostile work environment, in part, because the employer immediately removed the alleged harasser and thus prevented the single act of harassment from developing into a pattern of abuse that would become severe or pervasive enough to meet the requirements of Title VII claims. *Brooks*, 229 F.3d at 924 ("[t]o hold her employer liable for sexual harassment under Title VII, Brooks must show that she reasonably feared she would be subject to such misconduct in the future because the [employer] encouraged or tolerated [the abuser's] harassment.").

Contrary to Nixon's contentions, *Brooks* effectively demonstrates why Nixon's claims fail, as it reinforces the high standard of Title VII claims by requiring that the alleged conduct first be found sufficiently pervasive and severe. *Brooks*, 229 F.3d at 927, 930 (holding that the employer's response was unimportant when the hostile work environment claim failed because "[t]he harassment . . . was an entirely isolated incident. It had no precursors, and it was never repeated." The court explained that "[i]n no sense can it be said that the city imposed upon Brooks the onerous terms of employment for which Title VII offers a remedy." *Brooks*, 229 F.3d at 924.

Even if the Court were to find that the conduct of which Nixon complains could possibly rise to the level of pervasiveness or severity sufficient to support a hostile work environment claim, the Court concludes that Franciscan's response was adequate as a matter of law. Investigating an employee's report is a "key step" of any employer's response to employee complaints, and is "itself a powerful factor in deterring harassment," *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001). Here, assuming the alleged touching was sufficient to support a hostile work environment claim, Franciscan responded appropriately to Nixon's complaint by promptly initiating a thorough investigation. Dkt. 40 at 4, 15. As Nixon herself acknowledges in her opposition to the motion, Franciscan investigated the incident (*id.*), formally confronted Mian with the allegations (*id.* at 7), and encouraged Nixon to take steps necessary to ensure her own comfort and health (*id.* at 4-5), including paying for the administrative leave Nixon decided to take (Dkt. 34-17). It is also undisputed that as part of its investigation, Franciscan contacted Mian's previous employers and interviewed witnesses, including a

nurse who had been present during the alleged incident, but who did not actually see Mian touch Nixon. Dkt. 34 at 3, 4-5. Even after speaking with Mian's co-workers and former employers, Franciscan could not find anything to indicate Mian had a history of inappropriate contact or any other evidence to substantiate Nixon's claims. *Id*. at 4-5, 6-7.

Nixon also complains of the lack of preventative steps taken to ensure that she and Mian did not encounter one another while the investigation was underway, but as Mian was a contracted physician, and not an actual employee, Franciscan's ability to exclude Mian from seeing his patients where Nixon worked was limited. Dkt. 34 at 3. Notably, at the conclusion of its investigation, Franciscan invited Nixon to meet with its Human Resource Department to discuss alternative working arrangements, so that Nixon could comfortably return to work, even offering her the possibility of working at other locations away from Mian. Dkt. 34-22. Though Nixon may have been dissatisfied with the time the investigation took to conclude, or its results, the Court concludes that Franciscan responded adequately to Nixon's report by immediately initiating a thorough investigation. *See Swenson*, 271 F.3d at 1192 (when the employer promptly begins an investigation, reasonable delays supported by legitimate reasons will not by themselves cause even a lengthy investigation to constitute a failure to take remedial efforts).

**E.     Constructive Discharge Claim**

*Brooks* also clarifies the standard for constructive discharge claims, and explains that "[w]here a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable

ORDER - 11

1 person would leave the job." *Brooks*, 229 F.3d at 930. Constructive discharge claims
2 usually present a question of fact appropriate for the jury to decide. *See Watson v.*
3 *Nationwide Ins., Co.,* 823 F.2d 360 (9th Cir. 1987). However, here, taking Nixon's
4 allegations of fact as true, where the court finds such facts insufficient to support a hostile
5 work environment claim, a reasonable trier of fact could not conclude that Nixon was
6 driven from her employment, and thus her constructive discharge claim fails as a matter
7 of law. *Brooks*, 229 F.3d at 930.

8       Additionally, there is no separate cause of action for negligent investigation
9 available to Nixon. *See Pettis v. State,* 98 Wn. App. 553, 558 (1999) (holding that a duty
10 requiring non-negligent investigations must be explicitly created by statute, after which it
11 "cannot be imputed into other . . . contexts"); *Stansfield v. Douglas County*, 107 Wn.
12 App. 1, 18 (2001) (stating that generally, a claim for negligent investigation does not
13 exist under common law, and that this "rule recognizes the chilling effect such claims
14 would have on investigations").

15 **F.      WLAD**

16       As stated above, the proper analysis when considering sex discrimination claims
17 under Washington law mirrors the analysis of the Title VII claim, and as Nixon herself
18 concedes, the standards for liability under both laws are "virtually the same." Dkt. 40 at
19 2. Because the Court concludes that Nixon's Title VII claims, and therefore her WLAD
20 claims, against Franciscan fail as a matter of law, the Court need not reach the
21 constitutional issue regarding the WLAD exemption for nonprofit religious organizations.
22 In addition, because the Court does not address the WLAD exemption issue, the Court

1  need not reach a decision regarding Nixon's request to strike the declaration of Dianne
2  Keilian.

### III. ORDER

Therefore, the Court hereby **ORDERS** that Franciscan's motion for summary judgment (Dkt. 31) is **GRANTED** and Nixon's claims alleged against Franciscan in her amended complaint are **DISMISSED with prejudice**.

Dated this 12th day of March, 2012.

*/s/ Benjamin H. Settle*
BENJAMIN H. SETTLE
United States District Judge